IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES ALLEN CHRISTIAN (AIS# 177126), Plaintiff, | : : : : : | |
| vs. | : : | CIVIL ACTION NO. 16-00016-KD-N |
| WALTER MYERS, *et al*., Defendants. | : : : | |

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(a)(2)(R), and is now before the undersigned on the motion for summary judgment of Defendants Warden Walter Myers, Sergeant Ashley Kidd, and Correctional Officer Jermaine Bullard. (Doc. 19). For the reasons stated below, it is recommended that the motion for summary judgment of Defendants be **granted** and that Plaintiff's action against these defendants be dismissed with prejudice. It is further ordered that based on the findings of this report, Plaintiff's motion to compel discovery is **denied** as moot. (Doc. 23).

## I. Summary of Alleged Facts.[1]

Plaintiff James Allen Christian is currently serving a life sentence without parole for convictions of two counts of first-degree robbery and escape II. (Doc. 1 at 6; Doc. 19 at 1). This complaint arises from an incident that occurred while incarcerated at Holman Correction Facility on November 28, 2015. (Doc. 1). The parties do not dispute that on November 28, 2015, Inmate Brooks poured a mixture of boiling shaving powder and baby oil on Christian that resulted in burns to Christian's skin, namely his face and arms. (Doc. 19 at 1; Doc. 19-2 at 1-4). There is also no dispute that Christian immediately received medical treatment for his injuries. (Doc. 1 at 4; Doc. 19 at 2; Doc. 19-2 at 3). The crux of the complaint is whether or not the defendants failed to protect Christian from the assault in violation of the Eighth Amendment. (Doc. 1).

Christian claims that on October 31, 2015, he notified Correctional Officer Bullard "about personal problems" he was having with inmate Travis Brooks and requested a dormitory transfer. (Doc. 1 at 4). The record reveals that Officer Bullard, lacking the authority to grant transfers, escorted Christian to Sergeant Kidd's office to speak with her regarding his request. (*Id.*). According to Christian, he informed Sergeant Kidd that he and Brooks were having "problems" and asked to be moved to another dorm; however, Sergeant Kidd refused the transfer and told Christian she would place his

---

[1] The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case. *Priester v. City of Riviera Beach, Fla*, 208 F.3d 919, 925 n.3 (11th Cir. 2000) (citations and internal quotation marks omitted); *see Cottone v. Jenne*, 326 F.3d 1352 n.1 (11th Cir. 2003) ("Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be actual facts."). Nevertheless, for summary judgment purposes, the Court's analysis begins with a description of the facts in the light most favorable to Plaintiff and disregards legal conclusions and recitations of the basic elements of a cause of action. *See Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009).

name on a waiting list to move to A Dorm. (*Id*.). Christian contends this request to transfer dorms put the defendants on notice that inmate Brooks posed a substantial risk of harm to his safety.

Defendants Bullard and Kidd admit Christian requested a dormitory transfer but "deny that Christian mentioned Brooks being a threat to him or made any reference to a fear of harm or assault." (Doc. 19 at 2). Instead, Defendants Bullard and Kidd assert that Christian refused to identify the inmate with whom he was having problems and the reason for wanting to move dorms. (*Id*.). Specifically, Bullard affirms that when:

> Sergeant Kidd asked inmate Christian why he wanted to be moved to another cell[,] Inmate Christian stated to Sergeant Kidd, that he did not want us in his business he just wanted to be moved. Inmate Christian refused to give Sergeant Kidd or me any information concerning what was going on with him or any name of the person he was having problems with.

(Doc. 19-3 at 2; *see also* Doc. 19-4 at 1). Additionally, Defendant Warden Myers denies that he was ever told that Christian was having a problem with any inmate, in particular inmate Brooks. (Doc. 19-5 at 1).

Plaintiff Christian is suing Defendants Warden Myers, Sergeant Kidd, and Correctional Officer Bullard for compensatory and punitive damages for their alleged failure to protect him from Brooks' attack on November 28, 2015. (Doc. 1 at 7). The defendants have answered the complaint and filed a special report affirming that they had no knowledge of any threats made to Christian and asserting the defenses of Eleventh Amendment immunity[2] and qualified immunity.[3] (Doc. 19). The court has converted

---

2   To the extent that Christian asserts claims against the defendants in their official capacities, the defendants are entitled to Eleventh Amendment immunity as state officials. It is well-established that "suits against an official in his or her official capacity are suits against the entity the individual represents." *Parker v. Williams*, 862 F.2d 1471,

Defendants' pleading into a motion for summary judgment. (Doc. 20). After review of the record, including Plaintiff's opposition to the motion (Doc. 22), the court determines the motion for summary judgment is ripe for consideration.

**II.  Summary Judgment Standard.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th

---

1476 n.4 (11th Cir. 1989); *see also Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690 n.55, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978) (indicating that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent). The Supreme Court has held that states and state officials are not "persons" subject to liability under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Moreover, pursuant to the Eleventh Amendment to the U.S. Constitution, a state may not be sued by its own citizens unless the state consents to suit or Congress acts to abrogate immunity. *See Carr v. Florence*, 916 F.2d 1521, 1524-25 (11th Cir. 1990). Neither has happened in this case. Therefore, the individual defendants enjoy absolute immunity from the damages claims raised against them by Plaintiff in their official capacities.

3  "Qualified immunity affords complete protection to government officials sued individually 'unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'" *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002). To overcome the defendants' qualified immunity defense, the plaintiff must allege facts that establish a violation of a constitutional right and that the right involved was "clearly established" at the time of the violation. *Id*. The failure to prove either of these prongs entitles the defendants to qualified immunity from suit. *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997). Additionally, the Supreme Court has concluded that a court may address these two prongs in any order. *Terrell*, 668 F.3d at 1250 (citing *Pearson*, 555 U.S. at 236). As discussed *infra*, the court finds no violation of a constitutional right and determines Defendants are entitled to qualified immunity.

Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); s*ee also Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen, supra*, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'") internal citations omitted); *see Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses [*7] relevant to the summary

judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom*. *Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer*, *supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether Defendants are entitled to summary judgment in this action, the undersigned has viewed the facts in the light most favorable to Plaintiff Christian. *Comer*, *supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski*, *supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp.*, *supra*, 43 F.3d at 599.

### III. Analysis.

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)) (alterations and quotations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834; *Purcell v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety.") (quotation omitted). To survive this motion, Plaintiff Christian must establish facts necessary to show defendants "disregarded [a] substantial risk by failing to act in an objectively reasonable way to alleviate the risk," and that the defendants "'acted with a state of mind that constituted deliberate indifference.'" *Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 767 (11th Cir. 2016)(citations omitted).

> In this context, deliberate indifference requires: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that amounts to more than mere negligence. [*Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010)]; *see also Ray v. Foltz*, 370 F.3d 1079, 1083 (11th Cir. 2004) ("Deliberate indifference is not the same thing as negligence or carelessness."). Thus, a prison official may have subjective knowledge only if he had both knowledge of specific facts from which an inference of risk of serious harm could be drawn, and he actually drew that inference. *Carter*[ *v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)]. And, therefore, a plaintiff's claim will fail as a matter of law in the absence

> of actual knowledge of the substantial risk, because to hold otherwise
> would impermissibly vitiate the subjective component of the analysis. *See
> Farmer*, 511 U.S. at 837-38.

*Id.* After a thorough review of the pleadings, the undersigned determines that Christian has failed to carry his burden of establishing Defendants had actual knowledge of a substantial risk to his safety, and, thereby, did not act with deliberate indifference in denying him a dormitory transfer or failing to protect him from the November 28, 2015 assault.

The Eleventh Circuit has repeatedly found a prisoner's failure to inform of a threat or fear of one's life to officers, while not dispositive, is a significant factor in assessing failure to protect claims. *Cf. Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir. 1990) (Plaintiff's report of a "racial problem," without specifying a threat, imminent attack, or fear of an attack, was insufficient to carry his burden of proving defendants had subjective knowledge of a risk of harm.); *Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) (*per curiam*) (No subjective knowledge or deliberate indifference shown where plaintiff failed to identify a specific "serious threat" reported to defendant officers, despite claims that he was repeatedly threated prior to being assaulted.); *Lavender v. Kearney,* 206 F. App'x 860, 863-64 (11th Cir. 2006) ("General knowledge about an inmate's violent tendencies, without more specific information about the risk, does not constitute deliberate indifference.").

Taking as true, for purposes of this motion, Plaintiff Christian's version of the facts alleged in the complaint, Defendants Kidd and Bullard were informed by Christian, approximately four weeks prior to the assault, "about personal problems between inmate Travis Brooks and" himself. (Doc. 1 at 4, 5, 6; *see also* Doc. 22 at 1, 6, 8). Christian

contends this notification demonstrates Defendants knew he was at a substantial risk for harm. This vague explanation, however, of "personal problems" does not rise to the constitutional level of establishing objective or subjective knowledge of serious risk or actual threat of harm. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (Plaintiff must show "a strong likelihood, rather than a mere possibility [of harm] before a guard's failure to act can constitute deliberate indifference.") (internal quotation marks omitted). Christian's pleadings further lack a showing that Defendants Kidd and Bullard had knowledge of a previous relationship between Christian and Brooks that could potentially lead a trier of fact to infer a risk of harm. *Farmer*, 511 U.S. at 844 (There can be no deliberate indifference if the defendant "did not know of the underlying facts indicating a sufficiently substantial danger" and he was therefore unaware of danger.). Notably, the record before the court is void of any actual threat made by Brooks to Plaintiff, and, fatally to his claim, Christian fails to assert that he ever articulated that fear or a specific threat to Defendants prior to the attack. *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("[B]efore a defendant's awareness rises to a sufficient level of culpability, there must be much more than mere awareness of an inmate's generally problematic nature."); *Prater v. Dahm*, 89 F.3d 538 (8th Cir. 1996) (Plaintiff did not allege facts from which an inference of substantial risk of harm could be made; plaintiff alleged only that fellow inmate had made threats against him); *Pickett v. Hart*, No. 7:07-CV-98(HL), 2010 U.S. Dist. LEXIS 26460, 2010 WL 1224024 (M.D. Ga. Jan. 27, 2010) (Defendants had no subjective knowledge of a threat of harm against plaintiff, and did not act in deliberate indifference to plaintiff's situation.); *McBride v. Rivers*, 170 F. App'x 648, (11th Cir. 2006) (Plaintiff's statement to officer that, "me and that dude had problems. I'm in fear

for my life. Don't put me in a cell with him" was insufficient to put defendant on notice of a serious risk of harm because Plaintiff failed to "identify a specific prior incident, from which the defendant could infer that a substantial risk existed."). As such, the record belies Christian's claim that Defendants knew he was at substantial risk of harm and acted with deliberate indifference in denying him a dormitory transfer.[4]

Similarly, Christian cannot overcome the burden of establishing Defendants had actual knowledge of a substantial risk of harm by the affirmation of inmate Earnest Lee Walker, Sr., that he spoke to Sergeant Kidd, as well as Warden Myers, Captain Fails, Lieutenant Stidham, and Officer Brown "about moving Christian due to his ongoing problems with Brooks." (Doc. 22 at 8-9). Walker contends in his submitted affidavit that "[t]he attitude of them all towards me in asking them to move Christian was indifferent and nonchalant by stating he'll be alright, he can handle himself." (Doc. 22 at 9); *see Farmer*, 511 U.S. at 844 (There can be no deliberate indifference if the defendant "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."). Walker's assertion, like Christian's, is void of claims or facts showing he ever personally knew of, much less disclosed, an actual threat or a known risk of harm to Plaintiff to any prison official on behalf of Christian.[5] As

---

[4] Following the denial to transfer dormitories, Christian did not "put in a request slip to the Captain to be moved" as instructed by Sergeant Kidd. (Doc. 22 at 8; Doc. 19-4 at 1). In fact, he made no further requests to any other officers, filed no grievances, and informed no one of a threat or fear for his safety during the entire month between the October 31, 2015 transfer denial and the attack.

[5] Notably, Inmate Walker does not claim to have known the cause for the attack until *after* the assault occurred. Walker affirms that "[o]n November 28, 2015 while working in the kitchen as a cook . . . [he] was informed by other inmates in the dorm that Brooks had been threaten[ed] to be violated by gang members (Crips) if he didn't do something to Christian to gain back some respect (He did not want Christian to reveal he

discussed above, the general knowledge that an inmate is having "problems" with another inmate does not equate to subjective knowledge of a risk of harm.

Consequently, Plaintiff Christian's claim that Defendants Kidd and Bullard had personal knowledge of a risk to Plaintiff and failed to act to protect him from that risk is unsupported by the record, and Plaintiff has failed to establish a necessary element of his Eighth Amendment claim. Thus, there are no facts that would lead a rational juror to believe Defendants acted with deliberate indifference in denying his transfer request or that Defendants are liable for failing to protect him, and the undersigned recommends that summary judgment be granted in favor of Defendants Kidd and Bullard.[6]

As to the claim against Defendant Warden Myers, that he is responsible for the assault due to the fact that he is the supervisor responsible for operating the prison, such a claim is rooted in the theory of *respondeat superior* and is not actionable. In order to state a claim upon which relief can be granted in a § 1983 action, a plaintiff must

---

was gay – Which is what some believed)." (Doc. 22 at 9).

[6] In opposition to this motion for summary judgment, Christian responds to the defendants' assertion that they were never told the name of the inmate with which Christian was having problems. He argues that Defendants "should have moved Christian to another dorm or placed him in segregation for his own protection due to an unknown enemy;" additionally, he asserts the failure of Defendants to investigate his allegation of having "a problem" with an unidentified inmate evidences deliberate indifference. (Doc. 22 at 3).

These claims are not borne out by the record, which reveals that Christian ever informed any prison officer or staff member that he had a known *enemy* nor did he ever request protective segregation. *See Rodriguez v. Sec'y for the Dep't f Corr*., 508 F.3d 611, 617 (11th Cir. 2007) (No deliberate indifference found where "the inmate never told prison officials that he 'feared' his attacker, never told them that he had been 'clearly threatened,' and never asked to be placed in 'protective custody.'") (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349-50) (11th Cir. 2003). And obviously prison officials should investigate allegations of violence or threats of violence, *Young v. Quilan*, 960 F.2d 351, 363 (3d Cir. 1992), but the case at hand lacks any such allegation or threat, and clearly, no specific threat was disclosed to Defendants.

establish a causal connection between each defendant's "actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights." *Frankum v. Chapman*, 2009 U.S. Dist. LEXIS 35267, 2009 WL 1118875, *3 (S.D. Ala. 2009) (citations omitted). Liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*. *See Edwards v. Ala. Dep't of Corrs.*, 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . .").

> "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Gonzalez*, 325 F.3d at 1234, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of *respondeat superior* or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Gonzalez*, 325 F.3d at 1235, 2003 WL 1481583, at *5; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, 325 F.3d at 1234, 2003 WL 1481583, at *5 (quoting *Braddy v. Florida Dep't of Labor & Empl. Sec.*, 133 F.3d 797, 802 (11th Cir.1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's "'custom or policy ... result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at 1235, 2003 WL 1481583, at *5 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)); *Hartley*, 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61 (11th Cir. 1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at 1234, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Christian fails to assert in any pleading that he notified Defendant Myer of an actual threat of harm or risk to his safety. Instead, Christian asserts in his response to the motion for summary judgment that the defendants have a custom or policy of failing to protect inmates. (Doc. 22 at 4).

In instances where supervisory liability is based on a supervisor's custom or policy, a plaintiff must show that the custom or policy was "the 'moving force [behind] the constitutional violation.'" *Pinkney v. Davis*, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted). "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." *Id.* (citations omitted).

Christian supports his claim solely by the identification of two inmates who, at unknown times and for unknown reasons, threw a hot liquid substance on another inmate outside the presence of an officer. (*Id.*). This elusive account of two prior assaults does not establish a custom of deliberate indifference to the defendants. Specifically, there is no allegation of or facts to support that prison officials had forewarning or knowledge of a risk of harm to those inmates prior to the attacks or that the attacks are so widespread that one could assume the attacks are tolerated by prison officials. In short, Christian fails to link the particular assaults to any custom or policy at Holman Correctional Facility, much less to the named Defendant.

Therefore, the undersigned recommends that summary judgment be granted in favor of Defendant Warden Myers, and Plaintiff's claims against him be dismissed with prejudice.

## IV.  Conclusion.

Based on the foregoing analysis, the undersigned concludes that there are no genuine issues of material fact, and that Defendants Warden Walter Myers, Sergeant Ashley Kidd, and Correctional Officer Jermaine Bullard are entitled to judgment as a matter of law on all claims and causes of action interposed by Plaintiff.  Therefore, it is recommended that Defendants' motion for summary judgment be **granted** on all counts and that Plaintiff Christian's action against Defendants be **dismissed** with prejudice.

It is further ordered that based on the findings of this Report and Recommendation, Plaintiff's Motion to Compel Discovery is **denied** as moot.[7]

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific

---

[7]  While this motion for summary judgment was under submission, Plaintiff Christian filed three discovery requests pursuant to *Federal Rules of Civil Procedure* Rule 33, 34, and 36. (*See* Docs. 24-26).  Although the defendants have failed to respond to these requests, such failure is a moot issue based on the findings of this report and recommendation.  The court notes the futility of the discovery requests as the determination of the report and recommendation was based on a reading of the facts in a light most favorable to the Plaintiff.  Thus, all of Plaintiff Christian's allegations were taken as true and all justifiable inferences are drawn in his favor for purposes of this motion, without the need for substantiating admissions and documents. *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008) (At the summary judgment stage of the case, "we make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor.).

written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 15th day of May 2017.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**